## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ELIZABETH MC KEE,

          **Plaintiff,**

                                     **Case No. 2:18-cv-191**

      **v.**                               **Magistrate Judge Norah McCann King**

ANDREW SAUL,
Commissioner of Social Security,

          **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Elizabeth Mc Kee for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 10, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income on, alleging that she has been disabled since May 15, 2012. R. 204–18. Plaintiff's applications were denied initially and upon reconsideration. R. 81–138, 144–

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

49. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 150−52. Administrative Law Judge Douglass Alvarado ("ALJ") held a hearing on December 30, 2016, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 31−80. In a decision dated March 6, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 15, 2012, Plaintiff's alleged disability onset date, through the date of that decision. R. 15−30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 21, 2017. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 16, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. ECF No. 7.[2] On March 11, 2020, the case was reassigned to the undersigned. ECF No. 24. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 26 years old on her alleged disability onset date. R. 25. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2012, her alleged disability onset date. *Id*.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: autism spectrum disorder, intellectual disability, and anxiety disorder. *Id*. The ALJ also found that Plaintiff's obesity was not severe. R. 18.

At step three, the ALJ found that Plaintiff does not suffer an impairment or combination of impairments that meets or medically equals the severity of any Listing. R. 18–21.

At step four, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 21.

At step five, the ALJ found that a significant number of jobs–*i.e*., approximately 150,000 jobs as a labeler; approximately 60,000 jobs as a microfilm mounter; approximately 120,000 jobs as a ticketer–existed in the  national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 15, 2012, her alleged disability onset date, through the date of his decision. R. 26.

Plaintiff disagrees with the ALJ's findings at steps two through five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 18; *Plaintiff's Reply*, ECF No. 23. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 22.

## IV.   DISCUSSION

### A.   Listing 12.05B

The record contains certain school records. R. 328−45, 410−452. On June 10, 2002, when Plaintiff was 16 years old, she underwent a psychological evaluation. R. 431. On the Wechsler Intelligence Scale for Children ("WISC"), Plaintiff achieved a verbal IQ score of 71, a performance IQ score of 64, and a full scale IQ score of 65. R. 333, 415, 431.

On January 10, 2008, when Plaintiff was 22 years old, Anthony J. Candela, Ph.D., A.B.P.N., administered the Wechsler Adult Intelligence Scale-III ("WAIS-III"), R. 368, on which Plaintiff achieved a verbal IQ score of 75, a performance IQ score of 85, and a full scale IQ score of 78. R. 369. Dr. Candela noted that Plaintiff's "scores place her well within the borderline to low average range of intellectual functioning. She is clearly learning disabled. Her reading comprehension and her word usage is somewhat lower on the intelligence scale that was on the reading test. The indication here is that she does have some trouble with comprehension." *Id*.

Plaintiff argues that the ALJ erred at step three of the sequential evaluation when he concluded that Plaintiff's impairments neither meet nor equal Listing 12.05, which, at the time of the ALJ's decision, addressed intellectual disorders. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17–20; *Plaintiff's Reply*, ECF No. 23, pp. 3–4. Plaintiff specifically contends that the ALJ erred in concluding, *inter alia*, that Plaintiff does not suffer significantly subaverage general intellectual functioning. *Id*. This Court disagrees.

An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

At the time of the ALJ's decision, *i.e.*, March 6, 2017, Listing 12.05 provided as follows:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2017).

Here, the ALJ found that Plaintiff did not meet Listing 12.05, reasoning as follows:

The claimant does not meet listing 12.05 because the record does not demonstrate that the claimant has significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and significant deficits in adaptive functioning currently manifested by your dependence upon others for personal

needs (for example, toileting, eating, dressing, or bathing); and the evidence about the claimant's current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22. The evidence does not demonstrate that the claimant has significantly subaverage general intellectual functioning evidenced by: a) a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or b) a full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; <u>and</u> significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: a) understand, remember, or apply information (see 12.00EI); or h) interact with others (see 12.00E2); or c) concentrate, persist, or maintain pace (see 12.00E3); or d) adapt or manage oneself (see 12.00E4); <u>and</u> the evidence about the claimant's current intellectual and adaptive functioning and about the history of the claimant's disorder demonstrates or supports the conclusion that the disorder began prior to attainment of age 22.

R. 18–19 (emphasis in original). In making this finding, the ALJ expressly referred to only Plaintiff's 2008 WAIS scores, not to her 2002 WISC scores; however, the ALJ went on to find that Plaintiff did not meet Listing 12.05B because she had only moderate limitations in the four broad areas of functioning:

In understanding, remembering, or applying information, the claimant has moderate limitations. It was felt that regular education classes would produce high anxiety levels due to faster pace and a more challenging workload. However, special education classes provided direct individualized instruction with low teacher/pupil ratio within a smaller classroom setting (Exhibit 13E, p. 10). On the WAIS-III intelligence test, the claimant obtained a verbal IQ score of 75, a performance IQ score of 85 and a full-scale IQ score of 78, placing her well within the borderline to low average of intellectual functioning (Exhibit 1F, p. 3). The claimant followed directions well and she worked to the best of her ability (Exhibit 7F, p. 2). The claimant enjoyed music and she played piano and clarinet (Exhibit 7F, p. 5).

In interacting with others, the claimant has moderate limitations. School records show that while the claimant is personable, she had some difficulty relating to her peers. She learned to advocate for herself and she was respectful to peers and staff (Exhibit 13E, p. 4). The claimant reported that she had a couple of friends, she spent time watching movies, goes to the mall and takes walks with her friends. She also reported having a "sort of boyfriend" (Exhibit 2F, p. 3). The claimant had obvious social difficulties, which made her an easy target for other students. She tended not to reach out to join activities in the school (Exhibit 7F, p. 3).

With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. Her perceptual reasoning index was 75, indicating borderline functioning in this domain. Working memory subtests were uniformly borderline and processing speed was low average. Her greatest strength was in the area of daily living skills, where she was noted to demonstrate fairly good self-care skills (Exhibit 3F, p. 2). The claimant followed school rules, she was respectful of authority and she learned to advocate for her own needs (Exhibit 7F, p. 3).

As for adapting or managing oneself, the claimant has experienced moderate limitations. The claimant worked part-time, 20-hours a week and she was capable of assisting with household chores, shop with assistance and use a microwave (testimony). School records shows that she consistently completed classwork and homework. The claimant followed school rules, and she had good self-concept, hut her self-esteem needed some improvement. She consistently needed reassurance (Exhibit 13E, p. 4). The claimant reported that she helped her grandmother, she was independent in dressing and she goes to the gym (Exhibit 2F, p. 3).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

R. 19−20.

Plaintiff disagrees with the ALJ's analysis, apparently contending that her medical and school records and qualifying WISC scores establish the requirements of Listing 12.05B. R. 333, 415, 431; *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17−20; *Plaintiff's Reply*, ECF No. 23, pp. 3−4.[3] In opposing Plaintiff's argument in this regard, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff had no more than moderate limitations in all four broad functional areas and that she therefore does not meet the requirements of Listing 12.05B. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22, pp. 17−19. Defendant's arguments are well taken.

As set forth above, Plaintiff's WISC scores−*i.e.,* verbal IQ score of 71, performance IQ score of 64, and full scale IQ score of 65−meet the first criterion of Listing 12.05B. *See* 20

---

[3] Plaintiff does not argue that she meets Listing 12.05A.

C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B.1 (2017) (requiring a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or a full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below). IQ scores are generally presumed to be "an accurate reflection of . . . [the claimant's] general intellectual functioning, unless evidence in the record suggests otherwise." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00H.2.d (2017); *see also id.* at § 112.00H.2.d (same). Accordingly, although "an ALJ may reject scores that are inconsistent with the record[,]" the ALJ must "provide a basis for that rejection." *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003); *see also Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) ("An ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record.").

Here, as previously noted, the ALJ did not discuss or refer to Plaintiff's WISC scores at step three when determining whether Plaintiff's cognitive impairment meets the requirements of Listing 12.05. However, it is clear that the ALJ was aware of those scores, because the ALJ expressly referred to Plaintiff's WISC scores at step four:

> School records show that while the claimant was performing on grade level in math, she was performing below grade level in Language Arts, Reading, Writing, Science and Social Studies. The claimant had a strong work ethic and she consistently completed homework and classwork (Exhibit 13E, p. 4). Intelligence testing show the claimant had a full scale IQ of 65 and a performance IQ of 64. Her English proficiency did not affect classroom performance and she showed an interest in music and computers (Exhibit 13E, p. 6). It was felt that regular education classes would produce high anxiety levels due to faster pace and a more challenging workload. However, special education classes provided direct individualized instruction with low teacher/pupil ratio within a smaller classroom setting (Exhibit 13E, p. 10).

R. 22. Although the ALJ did not explicitly discuss the validity of Plaintiff's WISC scores or expressly reject them, *see Markle*, 324 F.3d at 187; *Morales*, 225 F.3d at 318, any such error in

this regard was harmless. The ALJ went on to find that Plaintiff's impairment failed to satisfy the requirements of Listing 12.05B.2, which requires, in addition to a qualifying IQ score under Listing 12.05B.1, at least one extreme limitation in a broad area of functioning or two marked limitations in the broad areas of functioning. Plaintiff fails to explain how the ALJ's failure to mention her WISC IQ scores at step three harmed Plaintiff or how consideration of those scores at step three when analyzing the 12.05B.2 requirements would have changed the outcome of this case. *See Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17–18; *Plaintiff's Reply*, ECF No. 23, pp. 3–4. Accordingly, any error on the part of the ALJ in this regard was harmless and does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff has no more than moderate limitations in the four broad areas of functioning and that she therefore does not satisfy the requirements of Listing 12.05B.2. R. 19–20. In making this finding, the ALJ considered, *inter alia*, Plaintiff's WAIS scores that reflect borderline to low average intellectual functioning; ability to follow directions well; working to the best of her ability; ability to play piano and clarinet; ability to advocate for herself; respectful to peers and school staff; having friends; engaging in daily life activities such as watching movies, going to the mall, taking walks with friends; having a "sort of boyfriend;" a perceptual reasoning index of 75, indicating borderline functioning; uniformly borderline working memory subtests; low average processing speed; fairly good self-care skills; followed school rules; respectful of authority; worked twenty

14

hours per week; capable of assisting with household chores; able to show with assistance; able to use a microwave; consistently completed classwork and homework; able to help her grandmother; and dressing independently. R. 20.

In challenging the ALJ's finding on this point, Plaintiff simply recounts evidence from Jeffrey M. Stone, Ph.D., Steven Yalkowsky, Ph.D., and James Agresti, D.O., none of whom specifically opined that Plaintiff had a marked or extreme limitation in any broad area of functioning. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17–18 (citing R. 375–377, 380, 390–91, 394–409); *Plaintiff's Reply*, ECF No. 23, pp. 3–4 (same). Dr. Stone, an examining psychologist, opined that Plaintiff was unlikely to become gainfully employed, support herself financially, or live on her own. R. 376. However, the ALJ specifically considered this evidence and did not give it controlling weight because Plaintiff's employability is an issue reserved to the Commissioner. R. 24; *see also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."). Plaintiff also cites Dr. Stone's finding that, according to the Vineland Adaptive Behavior Scales 2nd Edition ("Vineland II"), Plaintiff's "'communication, socialization, and gross and fine motor skills are markedly deficient.'" *Plaintiff's Memorandum of Law*, ECF No. 18, p. 19 (quoting R. 376); *Plaintiff's Reply*, ECF No. 23, p. 3 (same). However, Plaintiff does not explain how this evidence translates into a marked or extreme limitation in any of the broad areas of functioning referred to in Listing 12.05B.2. *See id*. The Court will not construct Plaintiff's arguments for her. *See Padgett v.*

*Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff also cites Dr. Yalkowsky's statement that "'[g]iven the likelihood of global cognitive deficits, it is believed [Plaintiff] would require some advocacy from a responsible adult in her life to effectively manage her benefits if granted. Perhaps this intervention could be provided by her mother with whom she lives.'" *Plaintiff's Memorandum of Law*, ECF No. 18, p. 19 (quoting R. 380); *Plaintiff's Reply*, ECF No. 23, p. 4 (same).However, Plaintiff again fails to explain how this statement translates into an extreme or marked limitation in any identified broad area of functioning, as required by Listing 12.05B.2. *See id*. The Court cannot and will not speculate as to why this statement establishes that Plaintiff meets any requirement under Listing 12.05B.2. *See Padgett*, 2018 WL 1399307, at *2.

Plaintiff also refers to Dr. Agresti's treatment notes, including an August 9, 2013, note stating that Plaintiff has cognitive, motor, language, social/emotional delays. and other records indicating that Plaintiff has been treated for anxiety and panic attacks for which she took

16

medication, and that "[t]he impression was panic attacks but probably depressive disorder." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 19 (citing R. 390–91, 394–409); *Plaintiff's Reply*, ECF No. 23, p. 4 (same). However, Plaintiff again fails to explain how this evidence establishes that she has an extreme or marked limitation in a broad area of functioning. *Id.*; *see also Padgett*, 2018 WL 1399307, at *2. In any event, the ALJ specifically took Dr. Agresti's records into consideration, but also noted that Plaintiff no longer took medication for anxiety and that the record did not reflect any further treatment for anxiety. R. 23.[4]

For all these reasons, this Court concludes that the ALJ's finding that Plaintiff does not meet the requirements of Listing 12.05 enjoys substantial support in the record.

### B.    Obesity

Plaintiff also argues that the ALJ erred when he found Plaintiff's obesity to be non-severe at step two of the sequential evaluation and failed to properly evaluate her obesity in accordance with SSR 02-1p. *Plaintiff's Memorandum of Law*, ECF No. 18, at 19–21; *Plaintiff's Reply*, ECF No. 23, p. 4. Plaintiff's argument is not well taken.

Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00-3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments

---

[4] To the extent that Plaintiff challenges this finding by the ALJ, the Court addresses this matter later in this Opinion and Order.

afflicting the claimant[.]" *Id.* "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").

SSR 02-1p provides in relevant part as follows:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-

bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016)  (quoting *Jones,* 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

Here, the ALJ found at step two Plaintiff's obesity to be non-severe, reasoning as follows:

The claimant also has the following non-severe impairment: obesity. Claimant's

obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on claimant's ability to work. Although obesity is no longer a listed impairment, SSR 02-01 provides important guidance on evaluating obesity in adult and child disability claims. I am required to consider obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and determining the claimant's residual functional capacity. Obesity is considered severe when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities (SSR 02-01). However, I will not make assumptions about the severity or functional effects of obesity combined with other impairments. While obesity may or may not increase the severity or functional limitations of other impairments, each case will be evaluated solely on the information in the case record. **In the present case, claimant's file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments it has disabled her. The claimant is overweight, but does not complain of difficulties caused by her weight. Thus, claimant's obesity is not, by itself, nor in conjunction with her other impairments, so severe as to prevent her from working.**

R. 18 (emphasis added). The Court finds no error with the ALJ's assessment in this regard. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding remand unwarranted because it would not affect the outcome of the case where the claimant "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments" and that the claimant's "generalized response [that her weight makes it more difficult to perform certain physical tasks] is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments"); *see also Romero v. Comm'r of Soc. Sec.*, No. CV 18-16806, 2020 WL 2301444, at *2 (D.N.J. May 8, 2020) (rejecting conclusory contention that ALJ's error in failing to consider obesity at any point in decision justifies remand and noting that "the *Diaz* Court acknowledged the continuing vitality of *Rutherford*") (citations omitted). In arguing that the ALJ failed to properly evaluate her obesity, Plaintiff does not explain why her obesity is severe

nor does she identify any limitations caused by her obesity. *Plaintiff's Memorandum of Law*, ECF No. 18, at 19−21; *Plaintiff's Reply*, ECF No. 23, p. 4. Notably, Plaintiff did not identify obesity as a disability in her application for benefits or in her request for reconsideration during the administrative process. R. 147, 248; *see also* R. 378 (reflecting Dr. Yalkowsky's note that Plaintiff "is obese; but is otherwise, medically stable and does not report any health related difficulties"). Nor does Plaintiff explain how further consideration of her obesity would result in a different outcome. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553. Based on this record, this Court concludes that the ALJ properly considered Plaintiff's obesity. *Rutherford*, 399 F.3d at 553; *see also Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Tietjen v. Berryhill*, No. CV 17-8030, 2019 WL 1238830, at *4 (D.N.J. Mar. 18, 2019) (rejecting argument that the ALJ failed to properly consider the claimant's obesity where the claimant "failed to specify how her obesity met the disability criteria contained in the SSR and how her obesity precluded her from performing sedentary work with postural and environmental limitations, as the ALJ concluded she could" and where the claimant "failed to list obesity as an illness, injury, or condition constituting a disability in her application for SSI and SSDI benefits"); *cf. Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765−66 (3d Cir. 2016) (finding any error in the ALJ's analysis of obesity at step three would be harmless because the claimant "never explains how, even if the ALJ's analysis

21

was lacking, the deficiency was harmful to his claims. Woodson only says in very vague terms that an actual discussion of his impairments would lead to the conclusion that he was disabled at step three" and the claimant "has not affirmatively pointed to specific evidence that demonstrates he should succeed at step three"); *Dias v. Saul*, No. 3:17CV1812, 2019 WL 4750268, at \*4–5 (M.D. Pa. Sept. 30, 2019) (affirming denial of benefits where "the plaintiff's medical records are nearly devoid of references to his obesity. Plaintiff himself is unable to point to any restrictions or limitations in the medical record due to his obesity which must be considered" and finding a single reference to pain relating to the claimant's obesity did not show "how his obesity resulted in limitations on his ability to perform basic work activities").

In any event, at step two, an ALJ determines whether a plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at \*6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at \*8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for

related possible limitations in her RFC finding.").

As discussed, the ALJ decided in Plaintiff's favor at step two, finding that her autism spectrum disorder, intellectual disability, and anxiety disorder are severe. R. 17. The ALJ went on to evaluate Plaintiff's impairments through the remainder of the five-step sequential evaluation. R. 18–25. Accordingly, even if the ALJ erred by not finding other severe impairments, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

### C. Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, apparently arguing that the ALJ improperly minimized Plaintiff's impairments. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21–26; *Plaintiff's Reply*, ECF No. 23, pp. 1–3. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ

considers objective medical evidence as well as other evidence relevant to a claimant's

symptoms. 20 C.F.R. §§ 404.1529(c)(3),  416.929(c)(3) (listing the following factors to consider:

daily activities; the location, duration, frequency, and intensity of pain or other symptoms;

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any

medication you take or have taken to alleviate pain or other symptoms; treatment, other than

medication, currently received or have received for relief of pain or other symptoms; any

measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints,

*Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are

unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R.

§ 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[5]

Here, the ALJ followed this two-step evaluation process.  After considering the record

evidence, including Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's medically

---

[5]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." R. 21–22; *see also* R. 22 ("[T]here are several reasons why the

claimant's allegations of debilitating symptoms, should he deemed to be not wholly persuasive

nor consistent with the evidence in the record. Although the record shows the claimant does have

the impairments noted above, the symptoms do not cause the degree of limitation alleged."). The

ALJ also detailed years of record evidence, including, *inter alia*, that Plaintiff consistently

completed homework and classwork; her English proficiency did not affect classroom

performance; that her IQ scores on the WAIS-III placed her in the borderline to low average of

intellectual functioning; that Dr. Candela thought that training in clerical office skills would be

appropriate for her; that she was pleasant and cooperative during her examination by Ronald

Silikovitz, Ph.D. in April 2009, and was responsive to all questions, smiled appropriately, and

was eager to please; that Dr. Agresti noted in March 2010 that although Plaintiff had been

prescribed Paxil and Xanax, she was no longer taking medication for her anxiety; that Dr.

Yalkowsky noted in August 2014 that although Plaintiff's social skills were impacted by her

developmental disorder, she was pleasant and cooperative during the evaluation and her thought

processes were logical and coherent; that she reported to Dr. Yalkowsky that she had never

needed medication for her mental health issues, that she had been working part-time for eleven

years and reported no difficulties at work and enjoyed her work; that she is able to independently

use public transportation, do her own laundry, and perform household chores; that Plaintiff's

sister reported that Plaintiff spent time watching television, talking on the phone, going out and

interacting with people daily, and attending social events, including attending church and

attending alumni events; that Dr. Amy Brams, a state agency reviewing physician, opined in October 2014 that Plaintiff was capable of performing most activities of daily living independently, travel independently on familiar routes, understand, remember and execute simple instructions,  adapt to change, and adjust to supervision in environments where emotional and mental demands were modest; and that the fact that she works only part-time appeared to be related to availability of hours at her place of employment rather than to her inability to perform the work on a full-time basis, and that she was able to learn the work, which does not change significantly from day-to-day and she occasionally interacts with others. R. 22–24.

Plaintiff challenges the ALJ's observation that Plaintiff does not take prescribed medication: "The medication was prescribed but plaintiff's mother did not given them to her daughter because of the side effects of the medication." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 22 (citing R. 59–60 (referring to Plaintiff's mother's testimony that she did not give Plaintiff prescribed medication because of side effects)). Plaintiff's argument in this regard is not well taken. The ALJ properly considered Plaintiff's failure or refusal to take prescribed medication as one of many considerations in assessing her subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *see also Milano v. Comm'r of Soc. Sec.*, 152 F. App'x 166, 171 (3d Cir. 2005) (rejecting assertion that the ALJ improperly considered the claimant's subjective complaints where the ALJ, *inter alia*, "pointed out that she was not taking any prescription medication for pain, and had refused medication that had been prescribed to her for depression"); *Davis v. Colvin*, No. CV 16-625-LPS-MPT, 2017 WL 2829653, at *11 (D. Del. June 30, 2017), *report and recommendation adopted sub nom. Davis v. Berryhill*, No. CV 16-625, 2017 WL 4082567 (D. Del. Sept. 15, 2017) (deferring to the ALJ's assessment of the claimant's subjective complaints where the ALJ considered, *inter alia*, the claimant's "failed

adherence to his prescribed medical regimen"); *cf. Cardona v. Comm'r of Soc. Sec.*, 94 F. App'x 106, 107 (3d Cir. 2004) (finding that substantial evidence supported the ALJ's treatment of the claimant's subjective complaints where the ALJ considered, *inter alia*, that the claimant did not take prescription medicine).

Plaintiff also refers to Dr. Agresti's December 2014 observation that Plaintiff "is quite immature, childish, unable to live alone and does repeat herself on several occasions[,]" R. 387, arguing that the ALJ apparently rejected this treating physician's opinion. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 23–24; *Plaintiff's Reply*, ECF No. 23, p. 2. Although the opinions of treating physicians are entitled to great weight if they are consistent with the record, *see Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019); *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018), it does not appear that observation constitutes a medical opinion. *See* 20 C.F.R. §§ 404.1527(a) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."), 416.927(a) (same); *cf. Paczkoski v. Colvin*, No. 3:13-CV-01775, 2014 WL 4384684, at *9 (M.D. Pa. Sept. 4, 2014) (affirming denial of benefits where the ALJ afforded little weight to treating doctor's assessments where the doctor "did not opine that [the claimant] had any specific functional limitations or that he was disabled. . . . Thus, there was no opinion of functionality by [the treating doctor] that the ALJ could weigh"). In any event, Plaintiff has not shown how the outcome of the matter would be different if the ALJ had assigned great weight to Dr. Agresti's statement in this regard. *See Shinseki*, 556 U.S. at 409–10 (2009); *Rutherford*, 399 F.3d at 553. Accordingly, if there was any error in this regard, the error was, at most, harmless. *Id*.

Finally, Plaintiff also points to evidence in the record that supports her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21–26; *Plaintiff's Reply*, ECF No. 23, pp. 1–3. However, as previously noted, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359.

Accordingly, this Court finds that the ALJ has sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and his findings in this regard are supported by substantial evidence in the record. The ALJ's evaluation of Plaintiff's subjective complaints is therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"); *Campbell v. Berryhill*, No. CV 17-1714, 2018 WL 3575255, at *11 (E.D. Pa. July 25, 2018) ("'A diagnosis of fibromyalgia does not automatically render a person unable to perform jobs that exist in significant numbers in the national economy.'") (quoting *Edelman v. Astrue*, 2012 WL 1605102, at *4 (E.D. Pa. May 8, 2012)). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### D.    RFC

Plaintiff argues that the ALJ's RFC determination is not supported by substantial

evidence. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 26−27; *Plaintiff's Reply*, ECF No. 23, pp. 2−5. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. §§ 404.1545.(a)(1), 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with certain additional nonexertional limitations:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is able to understand, remember and carryout simple instruction, with only occasional changes to essential job functions; and is able to make simple work-related decisions. She can occasionally interact with supervisors and coworkers, but she cannot work on a team or in tandem with co-workers. She can never interact with the public and she cannot work in a job requiring extensive money management or making change.

R. 21. In making this determination, the ALJ detailed years of record evidence, including, *inter*

*alia*, that Plaintiff consistently completed homework and classwork; that her English proficiency did not affect her classroom performance; on the WAIS-III, she obtained a verbal score of 75, a performance IQ score of 85, and a full-scale IQ score of 78, which placed her in the borderline to low average of intellectual functioning; that Dr. Candela thought that training in clerical office skills would be appropriate for her; that she was pleasant and cooperative during her examination by Ronald Silikovitz, Ph.D. in April 2009, and was responsive to all questions, smiled appropriately, and was eager to please; that Dr. Agresti noted in March 2010 that although she had been prescribed Paxil and Xanax, she was no longer taking medication for her anxiety; that Dr. Yalkowsky noted in August 2014 that although Plaintiff's social skills were impacted by her developmental disorder, she was pleasant and cooperative during the evaluation and her thought processes were logical and coherent; that she reported to Dr. Yalkowsky that she never required any medication for her mental health issues, that she had been working part-time for eleven years and reported no difficulties at work and enjoyed work; that she is able to independently use public transportation, do her own laundry, and perform household chores; that Plaintiff's sister reported that Plaintiff spent time watching television, talking on the phone, going out and interacting with people daily, and attending social events, including attending church and alumni events; that Dr. Amy Brams, a state agency reviewing physician, opined in October 2014 that Plaintiff could perform most activities of daily living independently, travel independently on familiar routes, understand, remember and execute simple instructions,  adapt to change, and adjust to supervision in environments where emotional and mental demands were modest; and that her working part-time was apparently related to the availability of hours at her place of employment rather than to her inability to perform the work on a full-time basis, that she was able to learn the work, which does not change significantly from day-to-day, and that she

occasionally interacts with others. R. 22−24. The record unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

In challenging this determination, Plaintiff simply asserts, with no citation to the record, that "[t]he record will show that plaintiff has an inability to perform work at this level in that she is not capable of working more than a part time job. Judge Alvarado failed to provide such a detailed assessment, on this error alone, this matter must be remanded for a full and complete adjudication of the plaintiff's application." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 27. Plaintiff cites to no record evidence that supports her apparent assertion that her mental impairments require different or more restrictive limitations, nor does she identify what those limitations should be, or otherwise explain how remanding this action would lead to a different RFC determination. *See generally id*. The Court will not hunt through the record to find evidence or construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

To the extent that Plaintiff appears to argue in reply that her ability to work part-time does not translate into an ability to work full-time, *see Plaintiff's Reply*, ECF No. 23, pp. 2−5, this argument is not well taken. As set forth above, Plaintiff's ability to work part-time was but one of many factors that the ALJ considered when crafting the RFC determination.This Court concludes that the ALJ's RFC determination is consistent with the record evidence and enjoys

substantial support in the record.

### E.    Step Five

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to carry his burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Moving Brief*, ECF No. 18, pp. 27–29. Plaintiff's argument is not well taken.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 416.960(b)(2*); see also* 20 C.F.R. § 404.1560(b)(2). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). Finally, a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the

[ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

Here, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 21, 75–76. The vocational expert responded that the jobs of labeler, microfilm mounter, and ticketer would be appropriate for such an individual. R. 76. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Finally, Plaintiff's reliance on *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), is unavailing to the extent that she contends that the limitation to simple work or tasks does not adequately capture her mental impairments, presumably her moderate limitation in concentration, persistence, or pace. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 28. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (explaining that this conclusion "flows directly from our decision in *Ramirez*"). Here, as previously noted, the ALJ offered a "valid explanation" for the finding that Plaintiff would be limited to simple work-related decisions, relying on, *inter alia*, Dr. Brams's finding that Plaintiff retained the ability to understand, remember, and execute simple instructions. R. 21–24. Accordingly, based on this record,

*Ramirez* does not require remand or otherwise undermine that RFC finding or the Commissioner's finding at step five.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 6, 2020                    _____*s/Norah McCann King*_____
                                                      NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE